UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

v.

01- James Bernard Young,
02- Talora Ann Smith,

Defendants.

Criminal No. 09-228 (ADM/FLN)

**REPORT AND RECOMMENDATION**

───────────────────────────────────────────

Steven L. Schleicher, Assistant United States Attorney, for the Government.
Andrew H. Mohring, Assistant Federal Defender, for Defendant Young.
Frederick J. Goetz for Defendant Smith.

───────────────────────────────────────────

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 30, 2009, on Defendant Young's Motion to Suppress Evidence Obtained as a Result of May 11, 2009 Search and Seizure in Osage, MN [#65] and Defendant Young's Motion to Suppress Evidence Obtained as a Result of May 11, 2009 Search and Seizure in Arago Township, MN [#66]. At the hearing, the Court received testimony from Becker County Sheriff's Department Officer Bradley Skoog and Becker County Sheriff's Department Narcotics Investigator Patrick Todd Johnston. The Government submitted exhibits into evidence during the course of the hearing: Government's Exhibit 1 is a copy of the Application for Search Warrant, Supporting Affidavit and Search Warrant for property in Osage, MN; Government's Exhibit 2 is a copy of the Application for Search Warrant, Supporting Affidavit and Search Warrant for property in Arago Township, MN.

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant Young's motions be **DENIED**.

## I. FINDINGS OF FACT

On August 11, 2009, Defendants James Bernard Young, Talora Ann Smith and Tyler Charles Englund were indicted and charged with conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(A). (Indictment, Doc. No. 1.) Defendant Young's Motion to Suppress Evidence Obtained as a Result of May 11, 2009 Search and Seizure in Osage, MN [#65] and Defendant Young's Motion to Suppress Evidence Obtained as a Result of May 11, 2009 Search and Seizure in Arago Township, MN [#66] challenge state search warrants for Defendant Young's Minnesota residences. Defendant Young contends that evidence seized pursuant to the search warrants should be suppressed because the warrants were issued without a sufficient showing of probable cause, and in one case erroneously described the place to be searched. (Doc. Nos. 65, 66.)

### A. Background

Task Force Officer Johnston testified that he was the named affiant for the two search warrant applications and supporting affidavits at issue in this case. Both supporting affidavits recite the following events in support of the issuance of a search warrant for each residence.

On November 11, 2008, Officer Johnston was contacted by Special Agent Robert Mertz of the FBI, who advised Johnston that he had received information related to an indoor marijuana growing operation from a concerned citizen. (Gov't Ex. 1, at 3.) The concerned citizen provided the names of James Bernard Young[1] and a female companion by the name of "Molly," aka Gloria Young, as well as addresses on "Becker Line Road" and "County Road 121." *Id.* On November 17, 2008, Officer Johnston then confirmed that James Bernard Young listed "Co Rd 121 Osage,

---

[1] Officer Johnston further states in his affidavit that his familiarity with James Bernard Young stems from a prior narcotics investigation from 2001, during which 124 marijuana plants were discovered on another property owned by James Young on Co. Hwy 46 in Park Rapids, MN. (Gov't Ex. 1, at 4.)

MN" as his street address with the State of Minnesota Department of Motor Vehicles and confirmed that the Becker County website for property/taxpayer information listed "James B Young" as the owner of property on County Road 121. *Id.*

On November 26, 2008, Officer Johnston subpoenaed electrical records for Defendant Young's residences on County Road 121 and Becker Line Road for the period of August 30, 2007 through November 25, 2008. *Id.* at 4. The records for the residence on Becker Line Road listed "Talora Smith" as the subscriber and showed electrical usage of 160 KWH in August 2007, which jumped to "around 2000 KWH" in December 2007, and "then steadily increased to 10,337 KWH in October 2008." *Id.* The highest monthly payment for that residence was $995. *Id.* The records for the residence on County Road 121 named "Mollie Smith" as the subscriber and showed a "usage of 5197 KWH in August 2007," which "steadily decreased to 406 KWH in November 2008." *Id.*

On January 12, 2009, Officer Johnston met with Becky Renner of Energy Services for the City of Detroit Lakes. *Id.* at 5. She reviewed records from the address on Becker Line Road in Park Rapids, MN and determined that this location had "extremely high power records," which is unusual, and further stated that "in June-July the power took a big jump." *Id.*

On January 21, 2009, Officer Johnston obtained aerial photographs of the residence and outbuildings at the "Cty Rd 121 Osage" address. *Id.* His affidavit states that, after photographing the first residence, he "then flew down to photograph the James Young residence located at . . . Co. Rd. 121 in Becker County." *Id.* Although the listed addresses are the same, he describes two different locations; the former property contains a 40 x 60 outbuilding with a wooden venting system with three vent pipes, while the latter property consists of "a residence, large garage style outbuilding,

smaller outbuilding with fenced in area behind it, three small outbuildings." *Id.* Photographs of two different properties appear in the bodies of each search warrant. (Gov't Ex. 1; Gov't Ex. 2.)

On February 4, 2009, pursuant to further subpoena, Officer Johnston received additional power usage records for the "Cty Rd 121 Osage" address, which "appeared to be consistent with normal usage for the months of December 2008 and January 2009." (Gov't Ex. 1, at 5.) Further records for the County Road 121 property show consistently normal usage from February 2009 through May 2009. *Id.*

On February 9, 2009, Officer Johnston received additional records for the "Becker Line Road address," for the months of November 2008 through January 2009, which showed a usage of "25,256 [KWH]" for the three-month period, a reading which is "extremely high and would be consistent with the usage for an indoor marijuana grow." *Id.* This usage continued to be "very high" from February 2009 through April 2009. *Id.* at 6.

Based upon the power records for the County Road 121 address, Officer Johnston states his belief "that a marijuana growing operation did exist at this location at one time," however, the property "is no longer being utilized for this purpose." *Id.* He states that "the higher usage in power records months ago are a good indication that [a] marijuana grow operation did once exist at this location [County Road 121,] but has since been moved to the location at . . . Becker Line Road." *Id.* He indicates, however, that "supplies for such an operation will still be at this location [County Road 121,] along with items indicating that a marijuana growing operation once existed." *Id.* Officer Johnston states his belief that the address on County Road 121, Osage, MN remains James Bernard Young's primary residence and likely contains documents bearing the names of "James Young and Molly Smith" related to the marijuana growing operation, which will also assist in identifying any

co-conspirators. *See id.* Officer Johnston further states his belief "that an indoor marijuana growing operation exists at the . . . Becker Line Road residence and continues to be ongoing." *Id.*

**B. Search Warrant #1**

The first search warrant in question was issued on May 8, 2009 for Defendant Young's property located in Osage, Minnesota. (Gov't Ex. 1.) On the first page of the Application for Search Warrant and Supporting Affidavit, as well as on the search warrant itself, the address is listed as ". . . County Road 151 Osage, MN." *Id.* Becker County Sheriff's Office Narcotics Investigator Patrick Todd Johnston, assigned to the West Central Minnesota Drug Task Force, requested the warrant. *Id.* Officer Johnston testified that "151" was a typographical error and that the correct address is on County Road "121." He further testified that the address of the residence depicted in the photograph of the warrant application, as well as the address which was subsequently searched, was in fact on County Road 121 in Osage, MN. *Id.*

Judge Lisa Borgen of the Seventh Judicial District Court for the State of Minnesota signed the warrant, which authorized a search for property and items including (among other things): "books, records, receipts, notes, ledgers," grow records and "other papers relating to the transportation, possession, sale [and] transfer" of controlled substances; and "cannabis plants, processed cannabis and cannabis seeds." *Id.* at 8.

**C. Search Warrant #2**

The second search warrant in question was issued on May 7, 2009 for Defendant Young's property located at an address on Becker Line Road, in the Township of Arago, Minnesota (Gov't Ex. 2.) Judge Robert Tiffany of the Ninth Judicial District Court for the State of Minnesota signed the warrant, which authorized a search for property and items including (among other things):

"books, records, receipts, notes, ledgers," grow records and "other papers relating to the transportation, possession, sale [and] transfer" of controlled substances; and "cannabis plants, processed cannabis and cannabis seeds." *Id.* at 7.

Officer Johnston testified that he personally executed the first search warrant at the address on County Road 121, Osage, MN, on May 11, 2009. Officer Bradley Skoog of the Becker County Sheriff's Office testified that he executed the second search warrant at the Becker Line Road address, in the Township of Arago, MN on May 11, 2009.

## II. STANDARD OF REVIEW

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Pursuant to *Illinois v. Gates*, 462 U.S. 213 (1983), the task of a judge issuing a search warrant is to determine if a warrant sufficiently describes the place to be searched, so as to enable the executing officer to locate and identify the premises with reasonable effort. *United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004). The issuing judge must also determine "whether there is any reasonable probability that other premises might be mistakenly searched." *Id.* The duty of a reviewing court, however, is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. *Id.*

Under well-established Fourth Amendment jurisprudence, a valid search warrant must be supported by an affidavit providing the magistrate with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236-39. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.

"books, records, receipts, notes, ledgers," grow records and "other papers relating to the transportation, possession, sale [and] transfer" of controlled substances; and "cannabis plants, processed cannabis and cannabis seeds." *Id.* at 7.

Officer Johnston testified that he personally executed the first search warrant at the address on County Road 121, Osage, MN, on May 11, 2009. Officer Bradley Skoog of the Becker County Sheriff's Office testified that he executed the second search warrant at the Becker Line Road address, in the Township of Arago, MN on May 11, 2009.

## II. STANDARD OF REVIEW

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Pursuant to *Illinois v. Gates*, 462 U.S. 213 (1983), the task of a judge issuing a search warrant is to determine if a warrant sufficiently describes the place to be searched, so as to enable the executing officer to locate and identify the premises with reasonable effort. *United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004). The issuing judge must also determine "whether there is any reasonable probability that other premises might be mistakenly searched." *Id.* The duty of a reviewing court, however, is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. *Id.*

Under well-established Fourth Amendment jurisprudence, a valid search warrant must be supported by an affidavit providing the magistrate with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236-39. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.

In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* at 239.

Still, because "reasonable minds" may differ as to whether a particular affidavit establishes probable cause, the Supreme Court has established a "good faith" exception to the warrant requirement, according great deference to a magistrate's probable cause determination. *United States v. Leon*, 468 U.S. 897, 914 (1984) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). The *Leon* Court established that reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate should be admissible in the prosecution's case in chief. *Leon*, 468 U.S. at 913. On the contrary, if a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the *Leon* good faith exception to the warrant requirement does not apply. *Id.* at 922-23.

### III. LEGAL ANALYSIS

**A. Clerical Error Did Not Render the Osage, MN Search Warrant Invalid.**

The first issue at hand is whether the warrant, intended for the address on County Road 121 but improperly identified as County Road 151, meets the particularity requirement of the Fourth Amendment.

"A search warrant must contain a description of the place to be searched in order to comply with the fourth amendment's particularity requirement." *United States v. Curry*, 911 F.2d 72, 76 (8th

Cir. 1990) (citing *United States v. Alberts*, 721 F.2d 636, 639 (8th Cir. 1983)). In the present case, the first search warrant issued for the property in Osage, MN did not properly identify the premises to be searched because the address in the warrant is listed as ". . . County Road 151 Osage, MN" as opposed to the correct address on County Road 121. (*See* Gov't Ex. 1, at 8.) The government argues that this deficiency was cured by the supporting affidavit and photograph of the property.

"The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defining the scope of the warrant." *Curry*, 911 F.2d at 76 (citing *United States v. Gill*, 623 F.2d 540, 543 (8th Cir. 1980)). A description in the supporting affidavit, however, can supply the requisite particularity if "a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein." *Curry*, 911 F.2d at 76 (citing *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985)).

The Application for Search Warrant and Supporting Affidavit, which, although it inaccurately cited the County Road as "151" on the first page of the application, accurately stated the address of the residence to be searched as a location on County Road 121 throughout the body of the affidavit. (*See* Gov't Ex. 1.) Because, however, the search warrant in this case did not contain "suitable words of reference incorporating the affidavit, such as 'see attached affidavit,'" the warrant did not incorporate the affidavit's description of the place to be searched. *See Curry*, 911 F.2d at 76.

Still, Officer Johnston testified that the residence pictured in the photograph on the second page of the application, and included in the body of the search warrant, is that which is located on County Road 121. (Gov't Ex. 1.) Additionally, the search warrant itself contains a description of the property as "4.14 acres" and buildings "which consist of a white colored single story residence, two

smaller white colored outbuildings," and "a large white colored unattached garage." *Id.* at 8. The warrant further describes the vehicles on the property as "an older school bus" and an "older blue colored pickup." *Id.* Because the photograph, accompanied by a specific description of the property, is included in the warrant itself, the warrant, therefore, describes the property to be searched with sufficient particularity to satisfy the Fourth Amendment requirement.

This Court finds Officer Johnston's testimony regarding the clerical error to be credible and finds that the inconsistencies between the addresses listed in the application and the search warrant do not render the search warrant invalid. *See United States v. White*, 356 F.3d 865 (8th Cir. 2004). Moreover, even when lacking in probable cause, a warrant containing clerical errors can be saved by the good faith exception. *See United States v. Thomas*, 263 F.3d 805, 806 (8th Cir. 2001) (holding that a warrant containing an incorrect address survives when executed in good faith).

### B. Assuming, Without Deciding, That No Probable Cause Existed to Support the Search Warrants, the *Leon* Good Faith Exception Applies.

Defendant Young argues that the evidence seized pursuant to the search warrants should be suppressed because the warrants were issued without a sufficient showing of probable cause in the supporting affidavits.

The purpose of the Fourth Amendment exclusionary rule is to deter unlawful police conduct, and the rule's purpose will not be served by excluding evidence obtained by police acting in reasonable reliance upon a subsequently invalidated search warrant. *United States v. Leon,* 468 U.S. 897, 926 (1984). Only if a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," is the *Leon* good faith exception inapplicable. *Id.* at 922-23.

Defendant Young argues that evidence of decreasing and normal power usage for the address on County Road 121 defeats a finding of probable cause to search that residence for items related to a marijuana grow operation. Assuming, however, without deciding, that the supporting affidavits do not set forth facts sufficient to establish probable cause that evidence of a crime would be found at either residence, neither search warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* Absent here are allegations that the issuing judges abandoned their detached and neutral roles, or that Officer Johnston was dishonest or reckless in preparing his affidavits. Further, "reasonable minds" may differ as to whether these affidavits establish probable cause. *Id.* at 914.

The Court finds that the warrants here were not based upon affidavits so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The *Leon* good faith exception to the warrant requirement applies to the instant case, and suppression of evidence is not required. As the Court finds that the officers here acted in reasonable reliance on the search warrants, Defendant Young's motions to suppress evidence obtained from the searches of his residences must be denied.

## IV.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Young's Motions to Suppress be **DENIED** as follows:

1. Defendant Young's Motion to Suppress Evidence Obtained as a Result of May 11, 2009 Search and Seizure in Osage, MN [#65] be **DENIED**; and

2. Defendant Young's Motion to Suppress Evidence Obtained as a Result of May 11,

2009 Search and Seizure in Arago Township, MN [#66] be **DENIED**.

DATED: October 15, 2009                 *s/ Franklin L. Noel*
                                        FRANKLIN L. NOEL
                                        United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 29, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 29, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.